**Jeffrey N. STEVENS, Appellant–Petitioner,**

v.

**Karie E. STEVENS, Appellee–Respondent.**

**No. 48A02–9703–CV–177.**

Court of Appeals of Indiana.

July 10, 1997.

---

Jane G. Cotton, Smith, Ragains & Cotton, Anderson, for appellant-petitioner.

Patrick J. Cunningham, Jr., Anderson, for appellee-respondent.

## OPINION

FRIEDLANDER, Judge.

Jeffrey N. Stevens (Father) appeals from a judgment awarding physical custody of his minor daughter, M.S., to his ex-wife, Karie E. Stevens (Mother), who is the child's mother. We do not reach the issue presented by Father, however, because the following issue, presented by Mother upon cross-appeal, is dispositive of the appeal:

> Did the Madison Superior Court have jurisdiction over the issue of custody of M.S.?

We reverse.

The facts are that Father and Mother were married on June 20, 1987 and M.S. was born to the marriage on January 28 of the next year. The parties separated in December of either 1988 or 1989 (the record is unclear on the point). At that time, by written agreement, custody of the child was placed with Mother. During this time, the parties lived in North Carolina.

From the time of separation until November of 1995, the parties generally were able to agree on matters involving M.S.'s care and living arrangements. On February 2, 1996, Father filed a dissolution petition in Indiana. Between the separation and the filing of the petition, M.S. resided alternately with Mother, Father, and Mother's parents (M.S.'s grandparents).

In addition to filing a dissolution petition, Father also requested a preliminary injunction, which the court granted. The resultant restraining order directed, in pertinent part, as follows:

> Pending a hearing in this matter, the Court further orders that the parties, are RESTRAINED FROM:

1. Removing any child of the parties, residing in the State of Indiana, from the State of Indiana without prior written consent of all parties or the permission of this Court[.]

*Record* at 12.

In June 1996, unaware of the Indiana petition for dissolution and restraining order, Mother sent M.S. to Indiana to stay with Father for summer visitation. With Mother's consent, the visit was extended until August 17. On August 16, Father filed a petition for temporary custody, pending the final hearing in the dissolution action, which was scheduled for September 12, 1996. The petition was granted. On August 21, Mother responded with a CCS entry in which she stated that she had traveled to Indiana on August 17 to pick up M.S., and upon arrival learned of the restraining order. She informed the court that a North Carolina court had issued a custody order which was still in effect and that she had no prior knowledge of the restraining order. A hearing on the matter was set for August 22. Following the hearing, the court voided the August 16 order granting temporary custody to Father. The child remained with Father, however.

On September 5, Mother filed an objection to the Madison Superior Court's jurisdiction. Following a hearing, the court ruled that it had jurisdiction. The court entered a provisional order returning custody of M.S. to Mother, pending a final hearing. Following the final hearing, the court entered a decree of dissolution in which it granted physical custody to Mother during the school year, and to Father during Christmas break, spring break, and summer vacation.

■ Mother contends upon cross-appeal that the trial court erred in determining that it had jurisdiction to make a custody determination.[1]

■ Appellate review of a custody ruling is limited to determining whether the trial court abused its discretion in applying the statutory guidelines. *Van Schoyck v. Van Schoyck,* 661 N.E.2d 1 (Ind.Ct.App.1996), *trans. denied.*

■ Mother's argument that the Madison Superior Court was without jurisdiction is based upon Indiana's Uniform Child Custody Jurisdiction Law (UCCJL), Ind.Code Ann. § 31–1–11.6 *et seq.* (West 1979 & Supp. 1996). Specifically, Mother contends that because there was a North Carolina custody order in force at the time, and Indiana was not M.S.'s "home state" within the meaning of the UCCJL, the Indiana court did not have jurisdiction to enter a custody order.

It is beyond dispute that the jurisdictional provision of the UCCJL, *i.e.,* IC § 31–1–11.6–3, applies when a party seeks modification in Indiana of a custody order issued in another state or foreign country. Father contends, however, that IC § 31–1–11.6–3 does not apply when the dissolution proceeding in which the custody matter arises takes place in Indiana. This is a question of first impression in Indiana.

While Indiana has not addressed this question, our research reveals that other states which have enacted a version of the Uniform Child Custody Jurisdictional Act (the Uniform Act) have concluded that the jurisdictional requirements set forth in their versions of the Uniform Act are applicable even where the custody issue arises in a dissolution action or a petition for modification of custody. We find persuasive the reasoning of the Appellate Court of Illinois in *In re the Marriage of Miche,* 131 Ill.App.3d 1029, 87 Ill.Dec. 72, 476 N.E.2d 774 (1985).

In *Miche,* the father and mother were married in 1973 in the Phillippines and moved to California shortly thereafter. They lived in California for almost ten years, dur-

---

1. Father contends that Mother waived the issue because she did not designate her challenge to the ruling on jurisdiction as a cross-appeal. In support of this argument, Father cites *City of Hobart v. Carter,* 644 N.E.2d 898 (Ind.Ct.App. 1994). We cannot agree that *City of Hobart* compels the result urged by Father. In *City of Hobart,* we held that the appellee waived issues it had presented that were not raised initially by the appellant. The basis of our holding was the appellee's specific representation in its appellate brief that "there [was] no Cross–Appeal filed by the Appellees." *Id.* at 899 n. 1. In the instant case, Mother does not deny that she is presenting an issue upon cross-appeal.

ing which time three children were born to the marriage. In August 1983, the father took the two oldest children and moved to Illinois. In November 1983, the father filed a petition for dissolution in an Illinois court. Prior to entry of a final order in the Illinois action, however, the mother filed a dissolution petition in California. In both the Illinois and California actions, the petitioner sought custody of the children. The Illinois court entered a judgment, by default, granting custody of the two older children to the father. The mother entered a special and limited appearance in order to file a motion to vacate the judgment in the Illinois court. The Illinois court vacated the custody portion of the dissolution order, awarded temporary custody of the two oldest children to the father, but retained jurisdiction to make a final custody determination. The mother appealed.

The Illinois appellate court determined that California was the home state of the children within the meaning of Illinois's version of the Uniform Act. The court further determined that Illinois did not have jurisdiction of the custody question, in part because Illinois was not the children's home state. While the court's determination was also based partially upon the rationale that the children had a more significant connection with California than with Illinois, this conclusion was primarily a result of the fact that California was the children's home state.

█ The principle emerging from *Miche* is that a state may have jurisdiction to enter a dissolution decree, but such does not necessarily confer jurisdiction to make a child custody determination. Rather, jurisdiction over custody matters having an interstate dimension must be independently determined by application of that state's version of the Uniform Act. *Cf. King v. King*, 619 So.2d 125 (La.Ct.App.1993) (no jurisdiction where Louisiana was not the child's home state and a custody action was pending in the child's home state); *Cronin v. Camilleri*, 101 Md. App. 699, 648 A.2d 694 (1994) (no jurisdiction where Maryland was not the child's home state and a custody action was pending in the child's home state); *Williams v. Williams*, 110 N.C.App. 406, 430 S.E.2d 277 (1993) (no

jurisdiction where North Carolina was not the child's home state and there was a custody action pending in the child's home state).

█ In summary, our research reveals that when a state has adopted a version of the Uniform Child Custody Jurisdictional Act, jurisdiction over the issue of custody is determined by application of the Uniform Act, even if jurisdiction over the dissolution action is undisputed. Our research reveals no authority for the proposition advanced by Father that jurisdiction to preside over a dissolution action automatically confers jurisdiction to make a custody determination, even one having interstate dimensions. Therefore, we conclude that the question of whether an Indiana court has jurisdiction to make a child custody determination having interstate dimensions is governed by application of the UCCJL, even if the Indiana court's jurisdiction to preside over the underlying dissolution action is undisputed.

The jurisdictional provision of the UCCJL states:

> Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
>
> (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IC § 31–1–11.6–3 (West.Supp.1996). We must determine whether jurisdiction is established in the instant case pursuant to one of the four bases for jurisdiction identified in the statute.

Jurisdiction is established under subsection (1) only if Indiana is or has been the home state of the child. *Moore v. Miller*, 675 N.E.2d 755 (Ind.Ct.App.1997). Father does not contend that Indiana was M.S.'s home state within the meaning of the UCCJL, nor could he. The home state is "the state in which the child, immediately preceding the time involved, lived with his parents ... for at least six (6) consecutive months." IC § 31–1–11.6–2(5). The record clearly indicates that North Carolina, not Indiana, satisfies this criterion. Therefore, jurisdiction is not conferred upon the Madison Superior Court under subsection (1).

In order to confer jurisdiction under subsection (2), Father must establish two criteria, the first of which is that M.S. and Father have a significant connection to the State of

Indiana. However, this court has held that the significant-connection test may be applied "only when the child does not have a home state, so that the 'home state' test set out above does not apply." *Moore v. Miller*, 675 N.E.2d at 759. In view of the fact that M.S. has a home state other than Indiana, the significant connection test is not applicable and jurisdiction cannot be established under subsection (2). *Id.*

In order to establish jurisdiction under subsection (3), Father would have to show that M.S. was abandoned. Father did not allege abandonment, nor would the record support such an assertion. The Madison Superior Court did not have jurisdiction pursuant to subsection (3).

Two elements are required in order to establish jurisdiction under subsection (4). Because the requirements are listed in the conjunctive, both must be met. The first requirement is that it must appear that no other state would have jurisdiction under subsections (1)-(3), or that another state that is the child's home state declined jurisdiction. *Id.* North Carolina is M.S.'s home state and North Carolina has not declined jurisdiction of the custody issue.[2] Therefore, jurisdiction is not established under subsection (4).

In summary, whether a court has jurisdiction to decide the issue of custody in a case with interstate dimensions must be determined by application of IC § 31–1–11.6–3 of the UCCJL. This is true even where the dissolution petition is filed in Indiana and the Indiana court has jurisdiction to preside over the action. In the instant case, M.S.'s home state is North Carolina and that state has not declined jurisdiction over the custody issue. Therefore, pursuant to IC § 31–1–11.6–3, Indiana does not have jurisdiction over the question of the custody of M.S. and the Madison Superior Court erred in concluding to the contrary and issuing a custody order. This cause is remanded with instructions to vacate the order pertaining to the custody of

---

**2.** To the contrary, North Carolina has indicated that it will exercise its jurisdiction in determining who is to receive custody of M.S. On September 5, 1996, Mother filed a complaint in the General Court of Justice, District Court Division, in Carteret County, North Carolina, seeking custody of M.S. The North Carolina court issued an order five days later affirming its jurisdiction over both the child and the custody issue, and awarding temporary custody to Mother.

M.S and for further proceedings consistent with this opinion.

Judgment reversed.

KIRSCH and HOFFMAN, JJ., concur.