Cite as 2023 Ark. App. 304

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-22-641

| | |
|---|---|
| ESTEFANYA GARCIA HUERTA<br>APPELLANT | Opinion Delivered May 24, 2023 |
| | APPEAL FROM THE ARKANSAS<br>COUNTY CIRCUIT COURT,<br>NORTHERN DISTRICT<br>[NO. 01SDR-22-79] |
| V. | |
| MARCO POLO DAVILA DELGADO<br>APPELLEE | HONORABLE DONNA GALLOWAY,<br>JUDGE |
| | REVERSED AND REMANDED |

**STEPHANIE POTTER BARRETT, Judge**

Estefanya Garcia Huerta appeals from the Arkansas County Circuit Court's dismissal of her divorce, paternity, and child-custody complaint for lack of subject-matter jurisdiction. Huerta argues on appeal that the circuit court erred in finding that no grounds for jurisdiction under the UCCJEA existed and failed to properly exercise its discretion to determine the extent or significance of the children's connections with this state. We agree and reverse and remand.

Marco Polo Davila Delgado and Huerta were married on December 9, 2019, and separated on June 8, 2022. Prior to marriage, Huerta and Delgado were in a relationship that produced two children: MC1, born on August 18, 2014; and her second child, MC2, was born on September 24, 2016. The parties are citizens of Mexico living in Arkansas

pursuant to an agricultural work visa issued for Delgado and a family visa to Huerta and their children. The family arrived in Arkansas on February 16, 2022, and expected to live in Arkansas until November when no seasonal work was available and their visas expired. Huerta filed a complaint for divorce, paternity, and child custody on June 23, 2022. On June 30, 2022, Huerta filed a motion for an emergency ex parte order of custody alleging that Delgado had left the children alone in a car for most hours of the day in strenuous heat and in the presence of dangerous chemicals while Delgado worked at Hartley Flying Service, Inc., and that he intended to abscond to Illinois with the children. On July 1, 2022, the circuit court entered its order for emergency ex parte custody, finding that the minor children should not be removed from Arkansas County without prior permission of the court.

On July 25, 2022, Delgado filed his answer to the complaint as well as a counterclaim for an absolute divorce and reserved his jurisdiction issue. In his counterclaim, he requested that the circuit court adjudicate him the father of the children and asked for custody subject to Huerta's right of supervised visitation. Huerta filed her answer on August 15, 2022. Delgado also filed a motion for appointment of attorney ad litem on August 5, 2022, which Huerta responded to on August 15, 2022, agreeing that it was in the minor children's best interests that an attorney ad litem be appointed.

The following day, on August 16, 2022, a motion hearing was held to determine if the court had jurisdiction pursuant to Ark. Code Ann. §§ 9-19-201(a) et seq. (Repl. 2020). No testimony was provided by either party, even though a state-approved interpreter was

2

present; rather, the circuit court ruled from the bench following arguments by counsel. The circuit court ruled that Ark. Code Ann. § 9-19-204 (Repl. 2020) did not apply to this case. In the order of August 17, 2022, the circuit court ruled that it did not have jurisdiction to make an initial child-custody determination under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified at Ark. Code Ann. §§ 9-19-201 et seq., and the court found that it would take no further action as to any issues relating to the parties' minor children. From that order comes this appeal.

As this case is being presented before the Arkansas Court of Appeals following a bench trial, the standard of review is whether the circuit court's findings are clearly erroneous. *Kankey v. Quimby*, 2020 Ark. App. 471, at 2, 611 S.W.3d 671, 672 (citing *Poland v. Poland*, 2017 Ark. App. 178, 518 S.W. 3d 98). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Disputed facts and credibility determinations are within the province of the fact-finder. *Id.* Further, all cases that require a child-custody determination that may involve other jurisdictions require the circuit court to undergo an analysis under the UCCJEA to determine the appropriate forum. *Greenhough v. Goforth*, 354 Ark. 502, 126 S.W.3d 345 (2003). When a circuit court has the discretion to accept or decline the exercise of subject-matter jurisdiction under the UCCJEA, this court will not reverse the decision unless it finds there was an abuse of discretion. *Hatfield v. Miller*, 2009 Ark. App. 832, 373 S.W.3d 366; *Gill v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 284, 601 S.W.3d 458; *Wilson v. Beckett*, 95 Ark. App. 300, 304, 236 S.W.3d 527,

3

530 (2006). However, where a circuit court relies on an incorrect assumption of law in reaching its decision, it is appropriate for this court to reverse and remand the case for the circuit court to make further findings. *Gullahorn v. Gullahorn*, 99 Ark. App. 397, 260 S.W.3d 744 (2007). The circuit court has discretion to exercise, or decline to exercise, jurisdiction, and the erroneous failure of a circuit court to exercise its discretion is reversible error.

The supreme court set forth an overview of the UCCJEA in *Arkansas Department of Human Services v. Cox*, 349 Ark. 205, 211–12, 82 S.W.3d 806, 811 (2002). This court has considered and adopted the holdings from other jurisdictions that have recognized that the threshold requirements under the UCCJA concern subject-matter jurisdiction and that such jurisdiction can be raised at any time by the parties or sua sponte by a court of review and cannot be conferred by the parties. *See Dorothy v. Dorothy*, 88 Ark. App. 358, 199 S.W.3d 107 (2004); *Biscoe v. Biscoe*, 443 N.W.2d 221 (Minn. Ct. App. 1989) (citing *Campbell v. Campbell*, 388 N.E.2d 607, 608 (Ind. Ct. App. 1979); *Smith v. Super. Ct. of San Mateo Cnty.*, 137 Cal. Rptr. 348, 351, 353 n.3 (Cal. Ct. App. 1977)). Subject-matter jurisdiction relates to the competence of a court to hear a matter, and custody determinations are status adjudications not dependent upon personal jurisdiction over the parents. *Consford v. Consford*, 271 A.D.2d 106 (N.Y. App. Div. 2000). A state may have jurisdiction to enter a dissolution decree, but such does not necessarily confer jurisdiction to make a child-custody determination. *Stevens v. Stevens*, 682 N.E.2d 1309 (Ind. Ct. App. 1997). Rather, jurisdiction over custody matters having an interstate dimension must be independently determined by application of that state's version of the Uniform Act: when a state has adopted a version of the Uniform Child

4

Custody Jurisdictional Act, jurisdiction over the issue of custody is determined by application of the Uniform Act, even if jurisdiction over the dissolution action is undisputed. *Id.* The Act governs all custody cases, and it is not necessary to file a separate action under the Act to invoke its rules. *In re Marriage of Schoeffel*, 644 N.E.2d 827 (Ill. App. Ct. 1994) (stating that a party's request for custody in New York action for divorce was sufficient to trigger application of the Act although the party did not mention the Act).

Huerta argues that the circuit court erred by analyzing only one of the criteria set forth in Ark. Code Ann. § 9-19-201(a) to ascertain if it would have the jurisdiction to enter an initial child-custody determination. Specifically, the circuit court considered only whether the state of Arkansas was the home state of the minor children under Ark. Code Ann. § 9-19-201(a)(1) and did not consider if Mexico was a home state under the UCCJEA. It was uncontroverted that the parties and children had resided in Arkansas for eight to nine months each year. Thus, the definition of home state in Ark. Code Ann. § 9-19-102(7) would show that Mexico was not a home state of the children. The statute is clear that if there is no home state for the children, then further analysis is required. When the circuit court determined this question in the negative, it stopped all inquiry. However, the circuit court would have jurisdiction under the remaining sections of Ark. Code Ann. § 9-19-201(a) to enter an initial child-custody determination, namely subdivisions (a)(2) and (a)(4), as discussed below.

Arkansas Code Annotated section 9-19-201(a) guides our decision:

(a) Except as otherwise provided in Ark. Code Ann. § 9-19-204 [temporary emergency jurisdiction], a court of this State has jurisdiction to make an initial child-custody determination only if:

(1) this State is the home State of the child on the date of the commencement of the proceeding, or was the home State of the child within six (6) months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State,

(2) a court of another State does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home State of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 9-19-207 or § 9-19-208, and:

(A) the child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under § 9-19-207 or § 9-19-208; or

(4) no court of any other State would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child-custody determination by a court of this State.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination.

Additionally, Ark. Code Ann. § 9-19-102 sets forth definitions that are pertinent to the issues we now consider:

(3) "Child-custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

(4) "Child-custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear. The term does not include a proceeding involving juvenile delinquency, contractual emancipation, or enforcement under subchapter 3 of this chapter.

. . . .

(7) "Home state" means the State in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six (6) months of age, the term means the State in which the child lived from birth with any of the people mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

(8) "Initial determination" means the first child-custody determination concerning a particular child.

Delgado admits that for purposes of applying Ark. Code Ann. § 9-19-201 to the present case, "home state" includes Mexico. "A court of this state shall treat a foreign country as if it were a state of the United States for purposes of applying subchapters 1 and 2 of [chapter 19, UCCJEA]." Ark. Code Ann. § 9-19-105(a) (Repl. 2020).

The UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes in child-custody proceedings that involve other jurisdictions. *See Greenhough*, 354 Ark. 502, 126 S.W.3d 345. The UCCJEA as codified in Arkansas comprises three subchapters. Subchapter one provides general provisions, including definitions.

7

Subchapter two sets out jurisdiction and the method whereby the courts of this state issue a child-custody determination order. Arkansas Code Annotated section 9-19-201 sets forth the criteria used to determine whether this state has jurisdiction to make an initial child-custody determination. The criteria to be considered in section 9-19-201(a)(1) are centered initially on the home-state issue. A child must reside in the state for six consecutive months before the commencement of the action for Arkansas to be considered the home state as defined in Arkansas Code Annotated section 9-19-102(7). Here, it was shown that the children did not have a home state at the time of the commencement of the divorce, paternity, and child-custody case because the children had not lived in either Arkansas or Mexico for the required six-month period to acquire home-state jurisdiction. Huerta argues that the court erred when it considered only the question of whether the children had been residents of Arkansas for six consecutive months, which is just the first step in determining jurisdiction. Jurisdiction may still be asserted if other criteria set forth in Ark. Code Ann. §§ 9-19-201 et seq. may show that Arkansas is the appropriate forum for the child-custody determination. All cases that require a child-custody determination that may involve other jurisdictions require the circuit court to undergo an analysis under the UCCJEA to determine the appropriate forum. *See Greenhough*, 354 Ark. 502, 126 S.W.3d 345. Here, the court considered only section 201(a)(1) and failed to consider other criteria that may have provided jurisdiction to the court, especially since the evidence clearly showed that neither Mexico nor any other state had exercised jurisdiction over the children and that Mexico, by definition, was also not the home state. In other words, under the facts presented, there was no home state for these

children pursuant to the UCCJEA. When there is no home state identified for the children, the court may consider other criteria to determine if Arkansas was the proper forum to decide the child-custody issues. Thus, because no court had jurisdiction of this proceeding pursuant to Ark. Code Ann. § 9-19-201(a)(1), the circuit court could have exercised jurisdiction under subdivision (a)(2) of the statute if the court found that Huerta and the children had a significant connection with this state other than mere physical presence and that substantial evidence was available in this state concerning the children's care, protection, training, and personal relationships. However, the circuit court made no such findings. In fact, the circuit court failed to engage in a home-state analysis as is required under the UCCJEA. *Greenhough*, *supra.*

In this case, Arkansas was not the home state within six months before the commencement of the proceeding, even though all parties were residing in the state at that time. However, it is uncontroverted that the children have not lived in Mexico for six consecutive months for the past two years and were not living in Mexico when this divorce and child-custody case was initiated. The circuit court failed to determine if Mexico or any other state was a home state for the children. Delgado's arguments to the court were based strictly on the fact that the parties were citizens of Mexico and should return there for litigation—ignoring that, for child-custody purposes, Mexico did not have home-state jurisdiction. In this instance, the circuit court issued an incorrect statement of the law when it ruled, "A court of the state has jurisdiction only if--only if--this state is the home state on the date of the commencement of the proceedings or was the home state of the child within

six months before the commencement of the proceeding." Where a circuit court relies on an incorrect assumption of law in reaching its decision, it is appropriate for this court to reverse and remand the case for the circuit court to make further findings. *Gullahorn*, 99 Ark. App. 397, 260 S.W.3d 744. The court did not appreciate that the entire statute must be considered as a whole if there was no home state of the children.

To be UCCJEA compliant, the second criteria for asserting jurisdiction under section 201(a)(2)(A) and (B) must be considered. Accordingly, we reverse and remand the matter for the circuit court to complete the analysis.

Reversed and remanded.

THYER and WOOD, JJ., agree.

*Galvis Law PLLC*, by: *Angela Galvis Schnuerle*, for appellant.

*Boyd & Buie, Attorneys at Law*, by: *Christina Boyd*, for appellee.